UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF LOUISIANA

BRANDI WILLIAMS                          CIVIL ACTION

VERSUS                                   NO. 16-795-BAJ-EWD

BIOMET ORTHOPEDICS, LLC, ET AL.

## NOTICE

Please take notice that the attached Magistrate Judge's Report has been filed with the Clerk of the U. S. District Court.

In accordance with 28 U.S.C. § 636(b)(1), you have 14 days after being served with the attached report to file written objections to the proposed findings of fact, conclusions of law, and recommendations set forth therein. Failure to file written objections to the proposed findings, conclusions and recommendations within 14 days after being served will bar you, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the District Court.

ABSOLUTELY NO EXTENSION OF TIME SHALL BE GRANTED TO FILE WRITTEN OBJECTIONS TO THE MAGISTRATE JUDGE'S REPORT.

Signed in Baton Rouge, Louisiana, on March 31, 2017.

**ERIN WILDER-DOOMES**
**UNITED STATES MAGISTRATE JUDGE**

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF LOUISIANA

BRANDI WILLIAMS                                    CIVIL ACTION

VERSUS                                             NO. 16-795-BAJ-EWD

BIOMET ORTHOPEDICS, LLC, ET AL.

## REPORT AND RECOMMENDATION

Before the court is a Motion to Remand[1] filed by Plaintiff, Brandi Williams ("Plaintiff").

The Motion to Remand is opposed by defendants Zimmer US, Inc. (d/b/a Zimmer Biomet), Biomet

Orthopedics, LLC (f/k/a Biomet Orthopedics, Inc.), and Biomet Inc. (collectively "Zimmer").[2]

For the reasons set forth herein, it is the recommendation[3] of the undersigned that the Motion to

Remand[4] be **DENIED**.

---

[1] R. Doc. 8.  Our Lady of the Lake Hospital, Inc. and Our Lady of the Lake Regional Medical Center have also filed a Motion to Dismiss asserting that "Plaintiff's claims against OLOL are grounded in medical malpractice, and thus are governed by [the LMMA]" and that because "Plaintiff failed to have her claims against OLOL reviewed by a medical review panel, her lawsuit against OLOL is premature."  R. Doc. 15.  In its Motion to Dismiss, OLOL additionally argues that "all of Plaintiff's claims against OLOL are now prescribed" and therefore must be dismissed with prejudice.  R. Doc. 15.  In opposition to the Motion to Dismiss, Plaintiff recognizes that "[t]he issues to be determined pursuant to OLOL's Motion [to Dismiss] coincide with the issues to be determined in Plaintiff's Motion to Remand.  Namely, both motions depend on a resolution of the issue of whether Plaintiff's claims against OLOL sound in ordinary negligence or medical malpractice."  R. Doc. 19.  The undersigned agrees that both the Motion to Dismiss and the Motion to Remand raise the issue of whether Plaintiff's claims against OLOL fall within the scope of the LMMA.  However, the Motion to Dismiss also raises the issue of whether Plaintiff's claims are prescribed and should be dismissed with prejudice.  As noted below, the undersigned does not make any determination or recommendation regarding OLOL's argument that Plaintiff's claims against OLOL are prescribed and should be dismissed with prejudice – an issue that is not directly before the undersigned via the instant Motion to Remand and which is not necessary for disposition of the instant motion.

[2] R. Doc 13.

[3] The Fifth Circuit has held that "a motion to remand is a dispositive matter on which a magistrate judge should enter a recommendation to the district court subject to *de novo* review." *Davidson v. Georgia-Pacific, LLC,* 819 F.3d 758, 765 (5th Cir. 2016).

[4] R. Doc. 8.

In the event this report is adopted and Plaintiff's Motion to Remand is denied, the undersigned further recommends that this matter be referred to the undersigned for a scheduling conference.[5]

## I.    Background

On or about July 18, 2016, Brandi Williams ("Plaintiff") filed a Petition in state district court against Our Lady of the Lake Hospital, Inc. and Our Lady of the Lake Regional Medical Center (collectively, "OLOL") and Zimmer.[6]  Plaintiff alleges that her husband, Alfred C. Williams ("Decedent"), underwent orthopedic knee surgery in order to replace a prosthetic knee device which had been previously implanted during a total knee replacement surgery.[7]  During this surgery, Decedent's physician allegedly approached the prosthesis and discovered that the old knee component was grossly loose, and he was able to easily remove it from the femur in order to replace it with another prosthesis device.[8]  Plaintiff alleges that following this surgery, Decedent developed serious infections, which required extensive medical treatment, including but not limited to subsequent hospital admissions and numerous subsequent surgical interventions[9] and that Decedent ultimately passed away on August 4, 2015.[10]

Plaintiff alleges that the faulty device was "designed, developed, manufactured, tested, packaged, promoted, marketed, and/or distributed" by Zimmer[11] and asserts claims against Zimmer pursuant to La. R.S. 9:2800.51, *et. seq.*, commonly referred to as the Louisiana Products

---

[5] The prior scheduling conference was deferred to permit resolution of the Motion to Remand.  R. Doc. 12.

[6] R. Doc. 1-1, p. 10-11.

[7] R. Doc. 1-1, ¶ 1.

[8] R. Doc. 1-1, ¶ 2.

[9] R. Doc. 1-1, ¶ 4.

[10] R. Doc. 1-1, ¶ 4.

[11] R. Doc. 1-1, ¶ 3.

Liability Act.[12]  With respect to OLOL, Plaintiff alleges that OLOL was negligent "in having failed to meet the standard of care required in the above describe medical situation, which acts of substandard care include, but are not limited to the following":

> (a)    Failure to provide an operative field free from the risk of infection and other complications;
>
> (b)    Failure to warn Plaintiff of an unreasonably high rate of infections in its facility;
>
> (c)    Failure generally to meet the standard care in the above described situation.[13]

On November 29, 2016, Zimmer removed this action to this court based on diversity jurisdiction pursuant to 28 U.S.C. § 1332.[14]  Zimmer claims there is complete diversity among the parties because the non-diverse defendant, OLOL, is improperly joined.[15]  Specifically, Zimmer asserts that: (1) OLOL is a "qualified health care provider" under the Louisiana Medical Malpractice Act ("LMMA");[16] (2) the LMMA requires submission of claims to a medical review panel for decision prior to filing suit in the district court;[17] and (3) Plaintiff failed to comply with the pre-suit requirements of the LMMA; thus, the claims against OLOL are premature and would be dismissed by the state court.[18]

On December 29, 2016, Plaintiff filed the instant Motion to Remand.[19]  Plaintiff asserts that this suit was improperly removed because OLOL is a Louisiana citizen, and therefore

---

[12] R. Doc. 1-1, ¶ 6.

[13] R. Doc. 1-1, ¶ 7.

[14] R. Doc. 1, ¶ 2.

[15] R. Doc. 1, ¶ 5.

[16] R. Doc. 1, ¶ 17.

[17] R. Doc. 1, ¶ 18.

[18] R. Doc. 1, ¶ 15.

[19] R. Doc. 8.

complete diversity does not exist.[20]  Plaintiff does not contest Zimmer's assertion that OLOL is a qualified health care provider under the LMMA;[21] instead, Plaintiff contends that the claims against OLOL are based in ordinary negligence—not medical failures—and therefore fall outside the purview of the LMMA and are not required to be presented to a medical review panel prior to filing suit.[22]

## II.    Analysis

### A.  Jurisdiction Under 28 U.S.C. § 1332(a)

Pursuant to 28 U.S.C. § 1332(a), this court has original jurisdiction "of all civil actions where (1) the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and (2) is between citizens of different States."  "It is axiomatic that the federal courts have limited subject matter jurisdiction and cannot entertain cases unless authorized by the constitution and legislation." *Coury v. Prot*, 85 F.3d 244, 248 (5th Cir. 1996).  Any ambiguities are construed against removal because the removal statute should be strictly construed in favor of remand. *Manguno v. Prudential Prop. and Cas. Ins. Co*., 276 F.3d 720, 723 (5th Cir. 2002).  Here, both Plaintiff and OLOL are alleged to be citizens of Louisiana; however, Zimmer asserts in its Notice of Removal that OLOL was improperly joined and its citizenship should be disregarded for purposes of this court's diversity analysis.[23]

---

[20] R. Doc. 8.

[21] Plaintiff also does not contest OLOL's status as a qualified health care provider in opposition to the Motion to Dismiss. *See*, R. Doc. 19.

[22] R. Doc. 8-1, p. 3.  In keeping with this position, Plaintiff does not assert that the claims against OLOL have been submitted to a medical review panel.

[23] R. Doc 1, ¶ 13.  Zimmer US, Inc. is a citizen of Indiana and Delaware.  R. Doc. 1, ¶ 10 ("Zimmer US, Inc. is, and was at the time Plaintiff commenced this action, a corporation organized under the laws of the State of Delaware with its principal place of business in Warsaw, Indiana….").  Biomet Orthopedics LLC, Biomet U.S. Reconstruction, LLC, and Biomet, Inc. are citizens of Indiana.  R. Doc 1, ¶ 11 ("Biomet Orthopedics LLC (f/k/a Biomet Orthopedics, Inc.), is, and was at the time Plaintiff commenced this action, an Indiana limited liability company. The sole member of Biomet Orthopedics, LLC, is Biomet U.S. Reconstruction, LLC, which is also an Indiana limited liability Company. The sole member of Biomet U.S. Reconstruction, LLC, is Biomet, Inc. Biomet, Inc., is a corporation organized under

### B.  Standard for Improper Joinder

If OLOL is a party in interest and properly joined, then as a citizen of Louisiana its presence in this civil action precludes removal and Plaintiff's motion to remand should be granted.  28 U.S.C. §1441(b)(2).  "The party seeking removal bears a heavy burden of proving that the joinder of the in-state party was improper."  *Smallwood v. Central Railroad Co.,* 385 F.3d 568, 574 (5th Cir. 2004).  *See also*, *Int'l Energy Ventures Mgmt.*, 800 F.3d 143, 149 (5th Cir. 2015) ("[Defendants] must prove their claim of fraudulent joinder by clear and convincing evidence.").  The Fifth Circuit has "recognized two ways to establish improper joinder: '(1) actual fraud in the pleading of jurisdictional facts, or (2) inability of the plaintiff to establish a cause of action against the non-diverse party in state court.'"  *Smallwood v. Central Railroad Co.,* 385 F.3d 568, 573 (5th Cir. 2004) (quoting *Travis v. Irby*, 326 F.3d 644, 646-47 (5th Cir. 2003)).  As to the second method, the test "is whether the defendant has demonstrated that there is no possibility of recovery by the plaintiff against an in-state defendant, which stated differently means that there is no reasonable basis for the district court to predict that the plaintiff might be able to recover against an in-state defendant." *Id.*  Zimmer does not assert there has been fraud in the pleading of jurisdictional facts. Accordingly, the undersigned considers whether Plaintiff has established a cause of action against the non-diverse defendant, OLOL.

### C.  The Louisiana Medical Malpractice Act ("LMMA") and Improper Joinder

"When a case is removed to federal court on the basis of diversity jurisdiction, the *Erie* doctrine requires federal courts to apply substantive state law when adjudicating state law claims." *RPM Pizza, LLC v. Argonaut Great Cent. Ins. Co.*, 2013 WL 1296678, at * 2 (M.D. La. March 28,

---

the laws of the State of Indiana, with its principal place of business in Indiana.").  Thus, if OLOL's citizenship is disregarded, the parties in this action are completely diverse.

2013) (citing *LeMeilleur v. Monumental Life Ins. Co.*, 419 F. Appx. 451, 453 (5th Cir. 2011) & *Erie R.R. Co. v. Tompkins*, 304 U.S. 64, 78 (1938)).  The Louisiana Supreme Court has explained that "[u]nder the [LMMA], a medical malpractice claim against a qualified health care provider is subject to dismissal on a timely exception of prematurity if such claim has not first been reviewed by a pre-suit medical review panel." *Dupuy v. NMC Operating Co., LLC*, 187 So. 3d 436, 438 (La. 2016).  "The LMMA requires that claims for malpractice against a qualified health provider be presented to a medical review panel before plaintiff can file an action in court." *Taylor v. Ochsner Clinic Foundation*, 2011 WL 6140885, at * 3 (E.D. La. Dec. 9, 2011) (citing La. R.S. § 40:1231.8(B)(1)(a)(i) [formerly La. R.S. § 40:1299.47(B)(1)(a)(i)] "[n]o action against a health care provider covered by this Part, or his insurer, may be commenced in any court before the claimant's proposed complaint has been presented to a medical review panel established pursuant to this Section.").  "The Supreme Court of Louisiana has interpreted this provision to not only require the plaintiff to *present* the claim to a medical review panel, but also to wait until 'the panel has *rendered its expert opinion* on the merits of the complaint' before filing suit." *Flagg v. Stryker Corp.*, 819 F.3d 132, 137-138 (5th Cir. 2016) (citing *Delcambre v. Blood Sys., Inc.* 893 So. 2d 23, 27 (La. 2005) (emphasis provided in *Flagg*)).

Unless the parties have waived the panel review requirements,[24] "'the plaintiff's suit must be dismissed' without prejudice if the plaintiff fails to satisfy this exhaustion requirement before filing suit." *Flagg*, 819 F.3d at 138 (citing *Gele v. Binder*, 904 So. 2d 836, 837 (La. App. 5 Cir. 2005)).  Accordingly, where a plaintiff fails to exhaust his claims as required by the LMMA, such claims are subject to dismissal and a defendant entitled to panel review is considered to be

---

[24] *See*, La. R.S. § 40:1231.8(B)(1)(c) ("By agreement of all parties, the use of the medical review panel may be waived.").  Plaintiff does not assert that panel review requirements were waived by the parties.

improperly joined. *Id*. at 139 ("Because Flagg did not complete the medical panel review process before filing suit, the LMMA explicitly prohibited him from suing the Medical Defendants in any court. Thus, Flagg had no possibility of recovery against the Medical Defendants, and the district court correctly dismissed the Medical Defendants as improperly joined."). *See also*, *Hungerford v. Smith & Nephew, Inc.*, 2016 WL 4499461, at * 1 (W.D. La. Aug. 23, 2016) ("Thus, a plaintiff who files suit against a diverse medical device manufacturer and also seeks to assert claims against a non-diverse health care provider for claims arising from the same events is precluded from naming the health care provider as a defendant until the medical review panel issues its expert opinion. If the diverse medical device manufacturer removes the case, there can be no remand based on the non-diverse health care provider until the medical review panel issues its expert opinions."); *Taylor v. Ochsner Clinic Foundation*, 2011 WL 6140885, at * 10 (E.D. La. Dec. 9, 2011) ("the Court holds that plaintiff's premature joinder of the Ochsner defendants constitutes improper joinder, and Ochsner is hereby dismissed. There being complete diversity between plaintiff and GE Healthcare, plaintiff's motion to remand is DENIED.").

The LMMA applies to "any unintentional tort or breach of contract" brought against a "qualified health care provider." La. Rev. Stat. § 40:1231.1(A)(13)(2016). Plaintiff does not dispute Zimmer's assertion that OLOL is a "qualified health care provider."[25] The LMMA's limitations on the liability of a health care provider apply strictly to claims "arising from medical malpractice," and all other tort liability on the part of the qualified health care provider is governed by general tort law. *Dupuy v. NMC Operating Co., LLC*, 187 So. 3d 436, 439 (La. 2016) ("This Court has also emphasized that the MMA and its limitations on tort liability for a qualified health care provider apply strictly to claims 'arising from medical malpractice,' and that all other tort

---

[25] R. Doc. 1, ¶ 17.

liability on the part of a qualified health care provider is governed by general tort law."). *See also*, *Coleman v. Deno*, 813 So. 2d 303, 315 (La. 2002) ("The MMA applies only to 'malpractice;' all other tort liability on the party of a qualified health care provider is governed by general tort law."); *Hutchinson v. Patel*, 637 So. 2d 415, 419 (La. 1994) ("The Act applies solely to claims 'arising from medical malpractice.'"). Accordingly, the undersigned considers whether Plaintiff's claims against OLOL arise from medical malpractice (such that they must be first presented to a medical panel review) or instead from other, general tort liability (and may therefore proceed forward in this suit).

The LMMA, La. R.S. § 40:1231.1(A)(13), defines "malpractice" as:

> [a]ny unintentional tort or any breach of contract based on health care or professional services rendered, or which should have been rendered, by a health care provider, to a patient, including failure to render services timely and handling of a patient, including loading and unloading of a patient, and also includes all legal responsibility of a health care provider arising from acts or omissions during the procurement of blood or blood components, in the training or supervision of health care providers, or from defects in blood, tissue, transplants, drugs, and medicines, or from defects in or failures of prosthetic devices implanted in or used on or in the person of a patient.

"Health care," in turn, is defined as "any act or treatment performed or furnished, or which should have been performed or furnished, by any health care provider for, to, or on behalf of a patient during the patient's medical care, treatment, or confinement…." La. R.S. § 40:1231.1(A)(9). The Louisiana Supreme Court has "set forth six factors to assist a court in determining whether certain conduct by a qualified health care provider constitutes 'malpractice' as defined under the MMA." *Dupuy v. NMC Operating Co., LLC*, 187 So. 3d 436, 439 (La. 2016). These six factors are:

> (1) whether the particular wrong is "treatment related" or caused by a dereliction of professional skill;
>
> (2) whether the wrong requires expert medical evidence to determine whether the appropriate standard of care was breached;

(3) whether the pertinent act or omission involved assessment of the patient's condition;

(4) whether an incident occurred in the context of a physician-patient relationship, or was within the scope of activities which a hospital is licensed to perform;

(5) whether the injury would have occurred if the patient had not sought treatment; and

(6) whether the tort alleged was intentional.

*See*, *Coleman v. Deno*, 813 So.2d 303, 315 (La. 2002). *See also*, *Dupuy v. NMC Operating Co., LLC*, 187 So. 3d 436, 440 (La. 2016) ("In order to determine whether the allegations sound in malpractice and fall within the ambit of the MMA, we analyze the factors set forth in *Coleman v. Deno*."); *Billeaudeau v. Opelousas General Hospital Auth.*, 2016 WL 6123862 (La. 2016), --- So. 3d --- (finding negligent credentialing claim sounded in general negligence based on analysis of *Coleman* factors).

### D. Plaintiff's Allegations Fall Within the Scope of the LMMA

Here, Plaintiff alleges that OLOL was negligent in "having failed to meet the standard of care required…[in a] medical situation."[26]  Plaintiff explains that her allegations against OLOL "arise due to its role as the source of the infection which [decedent] contracted when he underwent surgical procedures."[27]  In her Petition for Damages, Plaintiff specifically alleges that OLOL failed to "provide an operative field free from the risk of infection and other complications" and failed "to warn Plaintiff of an unreasonably high rate of infection in its facility."[28]  As the undersigned

---

[26] R. Doc. 1-1, ¶ 7.

[27] R. Doc. 8-1, p. 2.

[28] R. Doc. 1-1, ¶ 7.  The undersigned reads Plaintiff's allegation set forth in Paragraph 7(c), that OLOL failed "generally to meet the standard of care," to be a non-specific reiteration of Plaintiff's introductory clause asserting that OLOL failed "to meet the standard of care required in the above described medical situation."  R. Doc. 1-1, ¶ 7. Accordingly, the undersigned specifically analyzes whether Plaintiff's two explicitly alleged acts of negligence (*i.e.*, failure to provide a sterile operative field and failure to warn Plaintiff regarding an unreasonably high risk of infection) constitute medical malpractice under Louisiana law.

reads these specific allegations, Plaintiff's allegations as to OLOL involve the alleged failure to provide a sterile operative field and failure to adequately inform Plaintiff regarding the risk of infection.  As discussed herein, the undersigned finds that both of these specific allegations fall within the scope of medical malpractice under Louisiana jurisprudence and the *Coleman* factors and therefore these claims must be presented to a medical panel review.

### i.  Plaintiff's Allegation that OLOL Failed to Provide a Sterile Operating Field

In *Dupuy v. NMC Operating Co., LLC*, 187 So. 3d 436, 437 (La. 2016), plaintiffs brought suit stemming from injuries sustained post-operatively "based on a hospital's alleged failure to properly maintain and service equipment utilized in the sterilization of surgical instruments." Plaintiffs alleged that the defendant hospital "'fail[ed] to properly sterilize and/or clean surgical instrumentation' used in the surgical procedure and/or that 'the nursing staff and/or employees' of the Hospital failed to use proper aseptic technique before surgery."  *Id*. at 437.  In an amended petition, plaintiffs further alleged that the Hospital "failed to properly maintain and service all equipment utilized in the sterilization process including but not limited to, the washers and sterilizers used to sterilize the equipment used in [plaintiff's] surgery…."  *Id*. at 438.  The hospital filed exceptions of prematurity based on plaintiffs' failure to present the claims to a medical review panel.  The lower court granted the hospital's exception as to the original petition in its entirety, but denied the exception with respect to the allegation contained in plaintiffs' amended petition. Based on its analysis of the *Coleman* factors, the Louisiana Supreme Court concluded that "plaintiffs' allegation that the Hospital failed to properly maintain and service all equipment utilized in the sterilization process, including but not limited to, the washers and sterilizers used to sterilize the equipment used in plaintiff's surgery, constitutes medical malpractice under the MMA."  *Id*. at 440.

In so finding, the *Dupuy* court noted that "[o]ther courts, applying the MMA, have found infectious diseases acquired during surgical procedures to be 'treatment related,' regardless of the particular source of the infection." *Dupuy v. NMC Operating Co., LLC*, 187 So. 3d 436, 440 (La. 2016) (citing *Cashio v. Baton Rouge Gen. Hos.*, 378 So. 2d 182, 184 (La. App. 1 Cir. 1979) ("While we do not attempt to supply a universal definition of treatment, we do hold that it does include the furnishing of a clean and sterile environment for all patients.")). Accordingly, with respect to the first *Coleman* factor, whether the particular wrong was 'treatment related" or caused by a dereliction of professional skill, the court found that "proper sterilization of surgical instruments is at the very core of the 'treatment' of a patient…." *Id.* at 442. With regard to the second *Coleman* factor, whether the wrong requires expert medical evidence to determine whether the appropriate standard of care was breached, the *Dupuy* court explained that "whether instruments were in fact properly sterilized is a question that requires medical expertise." *Id.* at 443. The court further noted with respect to the fourth *Coleman* factor,[29] that plaintiffs' allegations were within the scope of activities which a hospital is licensed to perform because the Louisiana Legislature has directed the Department of Health and Hospitals to adopt standards "relating to 'sanitary conditions, practices and environment and sanitary and sterilization procedures and practices designed to avoid sources and transmissions of infections….'" *Id.* at 444 (citing La. R.S. § 40:2109(B)(2)). Finally, with respect to the fifth *Coleman* factor, the court noted that "[q]uite obviously, had [plaintiff] not sought treatment at the Hospital, he would not have contracted the

---

[29] In *Dupuy*, the parties agreed that the third and sixth *Coleman* factors – whether the alleged act involved assessment of a patient's condition and whether the tort alleged was intentional – were irrelevant to the case. Accordingly, the *Dupuy* court did not address those factors. 187 So. 3d at 444 n. 10. However, other courts that have considered these factors have also found allegations regarding improper sterilization to fall within the scope of the LMMA. *See, Taylor v. Ochsner Clinic Foundation*, 2011 WL 6140885, at * 7 (E.D. La. Dec. 9, 2011) ("while the hospital's failure to render medical equipment safe for surgery did not involve an assessment of the plaintiffs' conditions, the absence of this factor is not determinative" and noting that "plaintiffs have alleged negligence rather than intentional conduct, thus satisfying the sixth factor.").

post-operative infection" and further that the injury "occurred during treatment that he purposefully entered the hospital to undergo." *Id.* at 445.

Here, Plaintiff alleges that OLOL failed to "provide an operative field free from the risk of infection and other complications."[30] Plaintiff argues that this allegation "sounds in premises liability" because it "implicates a hazardous condition on the premises of OLOL and OLOL's administrative decisions which allowed that condition to be created and continue to exist, such as its decisions on how to clean and sterilize OLOL facilities."[31] Pursuant to *Dupuy*, the undersigned finds that this allegation falls squarely within the scope of the LMMA. Contrary to Plaintiff's assertion that this allegation implicates general negligence in creating a hazardous condition, including OLOL's procedures and policies for entering/exiting operating rooms and the adequacy of its janitorial services,[32] courts applying Louisiana law consistently find that an alleged failure to provide a sterile environment and prevent infection is within the scope of the LMMA. *See*, *Dupuy*, 187 So. 3d at 445 ("failure to sterilize the equipment used to sanitize surgical instruments fall[s] under the MMA."); *Taylor v. Ochsner Clinic Foundation*, 2011 WL 6140885, at * 5 & 6 (E.D. La. Dec. 9, 2011) (finding "LMMA unambiguously applies" to plaintiffs' allegation that defendant "breached its duty by negligently failing to sterilize endoscopes that were used in medical procedures on them" and explaining that "a hospital's duties associated with 'treatment' of its patients include 'the furnishing of a clean and sterile environment for all patients.'"). Moreover, Plaintiff's argument that the obligation to provide clean and sterile facilities is based upon OLOL's duty as a premises owner has been rejected by at least one Louisiana court. *See*, *Cashio v. Baton Rouge Gen. Hos.*, 378 So. 2d 182, 184 (La. App. 1 Cir. 1979) (rejecting plaintiffs'

---

[30] R. Doc. 1-1, ¶ 7(a).

[31] R. Doc. 8-1, p. 7.

[32] R. Doc. 8-1, p. 7.

argument that claims stemming from contraction of a "hospital staph" infection acquired during surgery were not encompassed within the definition of health care services or malpractice and were instead based "upon the duty owed as a premises owner" and explaining that the definition of treatment includes "the furnishing of a clean and sterile environment for all patients.").

### ii. Plaintiff's Allegation that OLOL Failed to Adequately Inform Plaintiff of the Risk of Infection

Plaintiff alleges that Decedent's injury resulted from OLOL's "[f]ailure to warn Plaintiff of an unreasonably high rate of infections in its facility."[33]   Plaintiff argues that this is not an allegation of negligence which implicates determinations of whether a patient's condition was properly assessed or whether a physician breached a professional standard of care.[34]   Rather, Plaintiff contends that her allegation "is that OLOL's facility presented an unreasonable risk of harm to all patients, not specifically to Decedent, and that they failed to warn Decedent about this dangerous condition."[35]

Louisiana courts generally characterize allegations regarding a failure to warn of surgical risks as claims of lack of informed consent.  *See*, *Lugenbuhl v. Dowling*, 701 So. 2d 447, 453 (La. 1997) (considering plaintiff's claim that doctor failed to use surgical mesh as promised and never told plaintiff of any risks involved in using mesh or that the decision whether to use mesh would be made during surgery to be an issue of informed consent); *Smith v. Lincoln Gen. Hos.*, 658 So. 2d 256, 262 (La. App. 2 Cir. 1995) (considering plaintiff's claim that doctor did not advise him of enhanced risk of infection during surgery based on plaintiff's personal risk factors to be an issue of lack of informed consent).  Moreover, the Louisiana Supreme Court has noted that "[t]he

---

[33] R. Doc. 1-1, ¶ 7.

[34] R. Doc. 8-1, p. 7.

[35] R. Doc. 8-1, p. 8.

Louisiana Legislature has also specified the theory of recovery in lack of informed consent claims as properly based on traditional fault theories, ***apparently to bring such claims under the Medical Malpractice Act***." *Lugenbuhl v. Dowling*, 701 So. 2d 447, 452 (La. 1997) (citing La. R.S. § 40:1157.1(D) [formerly La. R.S. § 40:1299.39.5] "In a suit against a physician or other health care provider involving a health care liability or medical malpractice claim which is based on the failure of the physician or other health care provider to disclose or adequately to disclose the risks and hazards involved in the medical care or surgical procedure rendered by the physician or other health care provider, the only theory on which recovery may be obtained is that of negligence in failing to disclose the risks or hazards that could have influenced a reasonable person in making a decision to give or withhold consent.") (Emphasis added).

Moreover, "Louisiana courts have held that the lack of informed consent is unintentional negligence and is subject to the provisions of the MMA." *Pardo v. Medtronic, Inc.*, 2010 WL 4340821, at * 1 (E.D. La. Oct. 26, 2010) (citing *Hodge v. Lafayette Gen. Hos.*, 399 So. 2d 744, 746 (La. App. 3 Cir. 1981) (plaintiff's allegation that surgical procedure was performed without his prior informed consent was covered by the provisions of the LMMA. *See also*, *Milton v. Merrell-Dow Pharmaceuticals, Inc.*, 589 So. 2d 1198, 1201 (La. App. 4 Cir. 1991) ("A patient's claim based on lack of informed consent is required to be submitted to a medical review panel prior to commencement of a lawsuit, notwithstanding the adoption of the uniform consent law."); *Voorhies v. Administrators of Tulane Educational Fund*, 2012 WL 1672748 (E.D. La. May 14, 2012) (parties agreed that plaintiff's claims, including the claim that defendant failed to warn plaintiff of risk of infection, was medical malpractice within scope of the LMMA); *Strickland v. Community Health Systems, Inc.*, 2005 WL 2106110, at * 3 n. 3 (W.D. La. Aug. 30, 2005) ("Plaintiffs' claims of failure to obtain informed consent are clearly governed by the provisions of

the LMMA."); *Baker v. Williams*, 825 So. 2d 563, 567 (La. App. 3 Cir. 2002) ("Cases involving allegations of lack of informed consent form a specialized subsection of medical malpractice actions….");

Further, the undersigned finds that the *Coleman* factors also support the conclusion that Plaintiff's claim that OLOL failed to warn her regarding "an unreasonably high rate of infection in its facility" falls within the scope of the LMMA. As discussed above, the definition of treatment includes "the furnishing of a clean and sterile environment for all patients." *Cashio v. Baton Rouge Gen. Hos.*, 378 So. 2d 182, 184 (La. App. 1 Cir. 1979) (cited with approval by *Dupuy v. NMC Operating Co., LLC*, 187 So. 3d 436, 440 (La. 2016)). The undersigned finds that an alleged failure to warn Plaintiff of a risk of infection (*i.e.*, the alleged failure to warn Plaintiff that a clean and sterile environment would not be provided) is likewise "treatment related." With regard to the second *Coleman* factor, at least one Louisiana court has explained that "in most cases, expert medical opinion is necessary to determine whether the patient has been informed of all 'known risks.'" *Hodge v. Lafayette Gen. Hos.*, 399 So. 2d 744, 746 (La. App. 3 Cir. 1981). Considering the third factor, although Plaintiff's allegation that OLOL failed to warn of a high risk of infection does not appear to involve the assessment of Plaintiff's condition, the absence of this factor is not determinative. *See*, *Taylor v. Ochsner Clinic Foundation*, 2011 WL 6140885, at * 7 (E.D. La. Dec. 9, 2011) (explaining that if this factor was required to be met in every case, "absurd results would follow. For example, no more obvious example of medical malpractice exists than when a doctor leaves a foreign object inside a patient following surgery, but this medical error would also not stem directly from an 'assessment of the patient's condition.'"). With regard to the fourth and fifth factors, whether the incident occurred in the context of a physician-patient relationship or was within the scope of activities which a hospital is licensed to perform and whether the injury would

have occurred had the patient not sought treatment, the undersigned finds that, absent seeking treatment at OLOL's facility, there would have been no need to inform Plaintiff regarding any risks related to such treatment. Plaintiff asserts that her allegation of failure to warn is that "OLOL's facility presented an unreasonable risk of harm to **all patients**…."[36] Accordingly, it appears that even Plaintiff recognizes that the failure to warn of the risk of infection would be related to an individual's status as a patient at OLOL's facility. Finally, Plaintiff has not alleged that OLOL committed an intentional tort. Accordingly, both Louisiana case law and consideration of the *Coleman* factors support a finding that Plaintiff's failure to warn allegation falls within the scope of the LMMA.

### E.  The Cases Relied on By Plaintiff are Distinguishable

Plaintiff argues that her allegations of misconduct should be considered "non-medical" and that "[t]he Louisiana Supreme Court has narrowly defined what type of allegations constitute medical malpractice and must be brought before an administrative review panel."[37] In support of her position that the allegations against OLOL fall outside the scope of the LMMA, Plaintiff relies on two lines of cases.

First, Plaintiff cites cases in which courts have held allegations relating to a heath care provider's failure to implement an adequate evacuation plan and decisions to shelter in place during natural disasters do not fall within the LMMA. For example, in *LaCoste v. Pendleton Methodist Hosp., L.L.C.*, 966 So. 2d 519 (La. 2007), plaintiffs brought claims against a hospital after a patient died from failure of life support during and in the aftermath of Hurricane Katrina. The Louisiana Supreme Court found that the defendant was not entitled to a medical review panel.

---

[36] R. Doc. 8-1, p. 8.  Emphasis added.

[37] R. Doc. 8-1, p. 4.

In so finding, the court explained that "plaintiffs' allegations of misconduct do not relate to medical treatment or the dereliction of professional medical skill; instead, they relate to deficit design of the hospital, including lack of emergency port, a failure to implement an evacuation plan, and a failure to have a facility to which a transfer of patients could be made." *Id*. at 525-526. Further, the court explained that "the pertinent acts or omissions alleged by the plaintiffs were the decisions that would have been made not by medical doctors or nurses, but more logically by engineers or administrators in determining how to design or maintain the building, how much emergency power to have available, and how and when to implement an emergency evacuation." *Id*. at 528. Similarly, in *Mineo v. Underwriters at Lloyds, London*, 997 So. 2d 187 (La. App. 4 Cir. 2008), the court held that plaintiffs' allegations that a nursing home was negligent in failing to evacuate a resident from the home prior to landfall of Hurricane Katrina or to provide adequate food or water during the hurricane sounded in ordinary negligence and fell outside the scope of the LMMA.

Second, Plaintiff cites cases in which allegations surrounding faulty equipment, such as beds and wheelchairs, were found to be outside the scope of the LMMA. *See*, *Blevins v. Hamilton Medical Ctr.*, 959 So. 2d 440, 446 & 447 (La. 2007) (finding that plaintiff's suit for damages sustained when he put pressure on an allegedly unlocked or defective hospital bed which rolled and caused plaintiff to lose his balance and fall was not within the scope of the LMMA and explaining that "the furnishing of equipment not in proper working order, has nothing to do with the condition and associated treatment for which the plaintiff was hospitalized. Plaintiff fell and sustained a new injury to his knee when he put pressure on the bed that rolled and moved. He was hospitalized to treat an infection of the groin. These two separate and distinct events occurred independently of each other…" and that "it is just as reasonable to say that any visitor to the hospital, even those not seeking treatment, who put pressure on this particular bed, could have

suffered injury."); *Williamson v. Hospital Service District No. 1 of Jefferson*, 888 So. 2d 782 (La. 2004) (medical center's alleged negligence in failing to repair a wheelchair and failing to ensure the wheelchair was in working condition prior to returning it to service did not arise from medical malpractice); *Watson v. Woldenberg Village, Inc.*, 203 So. 3d 317 (La. App. 4 Cir. 2016) (failure of an unspecified nursing home employee to securely attach a fall monitor to decedent's wheelchair did not sound in medical malpractice, because, *inter alia*, attaching the monitor did not require medical skill and improper installation of the monitor was unrelated to decedent's receipt of medical treatment); *Rivera v. Bolden's Transportation Service, Inc.*, 97 So. 3d 1096 (La. App. 1 Cir. 2012) (nursing home's alleged negligence in failing to provide a resident with a wheelchair with a seatbelt or safety strap to secure her during transport did not fall within the scope of the LMMA because, *inter alia*, the "accident could have occurred with any vehicular transport, whether medically related or not, if her wheelchair did not have a safety strap or seatbelt.").

The undersigned finds the cases relied on by Plaintiff to be distinguishable. With regard to those cases which deal with administrative decisions related to emergency situations, a decision to evacuate facilities or to otherwise respond to an impending natural disaster would apply equally to patients and non-patients alike, and would likely be made by an administrator rather than a medical professional. Moreover, allegations that beds or wheelchairs were faulty are not directly tied to a patient's receipt of medical treatment, and the injuries allegedly sustained in those cases were not considered to be treatment related or to be caused by a dereliction of professional skill. Instead, such injuries could have potentially been sustained by any individual, regardless of whether that individual was seeking medical treatment. Here, in contrast, Plaintiff's allegations that OLOL was negligent in failing to provide a sterile operating environment or warn regarding same are directly connected to Decedent's medical treatment and Decedent's status as a patient.

Moreover, and as discussed above, similar allegations have been consistently held to be within the scope of medical malpractice and the LMMA. Accordingly, the undersigned finds Plaintiff's allegations fall within the scope of the LMMA's definition of malpractice and therefore Plaintiff was required to submit the claim asserted against OLOL to a medical panel review prior to filing suit. Because Plaintiff's claims against OLOL were required to be submitted to a medical panel prior to filing suit, the undersigned concludes that OLOL was improperly joined, Plaintiff's claims against OLOL should be dismissed, and the Motion to Remand be denied. *See*, *Taylor v. Ochsner Clinic Foundation*, 2011 WL 6140885, at * 10 (E.D. La. Dec. 9, 2011) ("the Court holds that plaintiff's premature joinder of the Ochsner defendants constitutes improper joinder, and Ochsner is hereby dismissed. There being complete diversity between plaintiff and GE Healthcare, plaintiff's motion to remand is DENIED.")

### F.  Costs

Finally, Plaintiff seeks an award of costs, including attorney fees, incurred in preparing the Motion to Remand. Pursuant to 28 U.S.C. § 1447(c), "[a]n order remanding the case may require payment of just costs and any actual expenses, including attorney fees, incurred as a result of the removal." Because the undersigned recommends that the Motion to Remand be denied, the undersigned further recommends that Plaintiff's request for fees and costs pursuant to 28 U.S.C. § 1447(c) also be denied.

### III.    Conclusion

For the reasons set forth herein, it is the recommendation of the undersigned that the Motion to Remand[38] be **DENIED** and the claims against OLOL be dismissed.[39]

---

[38] R. Doc. 8.

[39] OLOL has filed a Motion to Dismiss. R. Doc. 15. Therein, OLOL likewise argues that Plaintiff was required to bring her claims before a medical review panel. R. Doc. 15-1, p. 1. OLOL further argues that "Plaintiff's claims against OLOL are not prescribed" and should be dismissed with prejudice. R. Doc. 15-1, p. 12-18. As discussed herein, the

Because the undersigned recommends that the Motion to Remand be denied, the undersigned further recommends that Plaintiff's request for fees and costs pursuant to 28 U.S.C. § 1447(c) also be **DENIED**.

In the event this report is adopted and Plaintiff's Motion to Remand is denied, the undersigned further recommends that this matter be referred to the undersigned for a scheduling conference.

Signed in Baton Rouge, Louisiana, on March 31, 2017.

**ERIN WILDER-DOOMES**
**UNITED STATES MAGISTRATE JUDGE**

---

undersigned find that Plaintiff's claims against OLOL fall within the scope of the LMMA and therefore Plaintiff was required to present these claims to a medical review panel prior to filing suit against OLOL. Accordingly, the undersigned recommends dismissal of Plaintiff's claims against OLOL as premature. The undersigned does not, however, make any determination or recommendation regarding OLOL's argument that such dismissal should be with prejudice – an issue that is not directly before the undersigned via the instant Motion to Remand and which is not necessary for disposition of the instant motion.